# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. SEAN C. MADDEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 17-1144 ) ) Hon. Nora Barry Fischer |
| GERALDINE JONES, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court in this matter is a Motion to Dismiss for Lack of Jurisdiction filed by Defendant Geraldine Jones. (Docket No. 23). Having considered Plaintiff's Second Amended Complaint, (Docket No. 22); Defendant's motion to dismiss and supporting briefing, (Docket Nos. 23, 24); and Plaintiff's response in opposition, (Docket Nos. 28, 29, 30), Defendant Geraldine Jones's motion to dismiss is GRANTED.

### II. Background

This matter arises from Plaintiff's employment at California University. The following facts are alleged in the Second Amended Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.

Plaintiff was hired by California University in 1988 as a professor in the History Department and achieved tenured status in 1996. (Docket No. 22 at ¶ 7). Throughout his employment at California University, Dr. Madden was a well-regarded, contributing member of the faculty and held leadership positions on campus, including, but not limited to, Chair of the

1

History Department. (*Id.* at ¶ 8). He was appointed as Interim Dean for the College of Liberal Arts on July 5, 2005, and served as same until his full diaconal appointment on July 1, 2006. (*Id.* at ¶¶ 9-10). Dr. Madden served as Dean of the College of Liberal Arts until January 1, 2007, when he was appointed to Interim Provost and Vice President for Academic Affairs, a position which he held until he was named full Provost and Vice President on October 8, 2007. (*Id.* at ¶ 11). He served as Provost and Vice President for one year, until the decision was made by California University's leadership that he return to the academic faculty. (*Id.* at 12).

After discussion and negotiation, Dr. Madden was presented with a written "settlement" agreement to restore him to the faculty. (*Id.* at ¶¶ 13-14). The Settlement Agreement provided for Dr. Madden's return to the classroom and for a full restoration to his pre-appointment status as follows:

> The faculty has voted to reinstate Madden as a full professor in the Department of History and Political Science. Beginning July 1, 2009, Madden will be reinstated as a full time faculty member with tenure at step 13 and will be assigned a teaching workload in accordance with the APSCUF contract. Upon his return to a faculty position he is not entitled to any accommodations to compensate for the reduction in salary resulting from his resignation as Provost.

(*Id.* at ¶¶ 15-16; *see also* Docket No. 22-1 at 2). A collective bargaining agreement governing the academic faculty provides:

> Members of the ADMINISTRATIVE FACULTY, who in the opinion of the President have the requisite qualifications to teach in a department, may be placed in a full-time, budgeted, available, uncommitted teaching vacancy in a department, provided that the approval of the majority secret ballot vote of the regular full-time FACULTY in the receiving department has been obtained prior to the appointment. An ADMINISTRATIVE FACULTY MEMBER placed in such a position shall retain all University-wide seniority credit previously accrued.

(Docket No. 22 at ¶ 18 (emphasis omitted); *see also* Docket No. 22-2 at 3).

2

Despite these provisions, California University, through Defendant, has refused to recognize Dr. Madden's seniority points earned during each year of academic service dating from 1988 and, instead, only recognizes the seniority points earned following Dr. Madden's return to the academic faculty from 2009 to the present. (Docket No. 22 at ¶ 20). Dr. Madden attempted to exercise his administrative remedies pursuant to the collective bargaining agreement, but the union and the Association of Pennsylvania State College and University Facilities ("APSCUF") asserted that his dispute arose out of the terms of the settlement agreement rather than the collective bargaining agreement. (*Id.* at ¶¶ 23-26). Plaintiff admits that no further action has been taken. (*Id.*). When Dr. Madden addressed the issue with Defendant, she advised him that he would have to file a lawsuit to protect his seniority points. (*Id.* at ¶ 27).

In March 2017, California University announced in a letter its intention to pursue faculty retrenchment, citing financial reasons. (*Id.* at ¶ 28). Yet, in a letter dated July 21, 2017, California University announced that the retrenchment was withdrawn. (*Id.* at ¶ 30). This letter was "silent as to the indefiniteness of the withdrawal." (*Id.*). According to the collective bargaining agreement and the policies of the Pennsylvania State System of Higher Education ("PASSHE"), the most junior faculty members in an impacted academic department, including the History Department, were to be retrenched. (*Id.* at ¶ 31). Dr. Madden learned that because California University and Defendant have refused to credit his accrued seniority points, he is the least tenured and most junior member of the History Department. (*Id.* at ¶ 32). Dr. Madden contends that he is being targeted by PASSHE and Defendant because of his relationship with former California University President Angelo Armenti, Jr., who fell out of favor with PASSHE and was terminated. (*Id.* at ¶ 34).

Plaintiff filed this action on August 30, 2017, asserting claims against Defendant, California University, and PASSHE for procedural due process violations, substantive due process violations, and declaratory judgment. (Docket No. 1). In response to Defendant, California University, and PASSHE's motion to dismiss, Plaintiff filed an Amended Complaint against Defendant and California University. (Docket Nos. 8, 13). After Defendant and California University filed a motion to dismiss, Plaintiff responded, wherein he stipulated to the dismissal of California University and relied upon facts outside the Amended Complaint. (Docket Nos. 15, 19, 21). Accordingly, the Court denied, without prejudice, the motion to dismiss and ordered Plaintiff to file a Second Amended Complaint. Plaintiff filed his Second Amended Complaint on February 21, 2018, asserting claims against Defendant for procedural due process violations, substantive due process violations, and declaratory judgment. (Docket No. 22 at ¶¶ 41-71). Defendant filed a motion to dismiss for lack of jurisdiction, to which Plaintiff responded. (Docket Nos. 23, 24, 28, 29, 30). This matter is now ripe for disposition.

### III. Legal Standard

#### A. *Motion to Dismiss – Rule 12(b)(1)*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party asserting jurisdiction, the plaintiff bears the burden of showing that its claims are properly before the court. *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a

court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Mortensen*, 549 F.2d at 891.

       B. *Motion to Dismiss – Rule 12(b)(6)*

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 678.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**IV.    Discussion**

  *A. Standing*

Defendant argues that the Court lacks jurisdiction over Plaintiff's claims because he does not have Article III standing to challenge the retrenchment. (Docket No. 24 at 6-7). Specifically, Defendant points out that California University withdrew the retrenchment in a letter dated July 21, 2017. (*Id.* at 6 (citing Docket No. 23-1)). Because Plaintiff states only that he remains in a "'precarious'" position, Defendant maintains that "[t]he only matter before the Court is [his] speculation over what the University may or may not do in the future and whether that possible

action might violate his 2008 settlement agreement." (*Id.* at 7). Defendant further asserts that Plaintiff's action is a contractual dispute under state law that does not raise any federal questions. (*Id.*). In response, Plaintiff argues that he suffered an injury because Defendant arbitrarily deprived him of his seniority points for service in the academic faculty. (Docket No. 30 at 7).

"The judicial Power of the United States" extends only to actual "Cases" and "Controversies." U.S. CONST. art. III, §§ 1, 2. A dispute does not constitute a justiciable "Case" or "Controversy" unless the party seeking redress has the proper legal "standing" to do so. *Flast v. Cohen*, 392 U.S. 83, 95 (1968). "In order for a plaintiff to have Article III standing, he or she must establish that: (1) he or she has suffered an 'injury in fact' (i.e., an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, and not merely conjectural or hypothetical); (2) there is a causal relationship between his or her injury and the alleged conduct of the defendant; and (3) it is likely that the injury will be redressed by a decision rendered in his or her favor." *Burns v. Alexander*, 776 F. Supp. 2d 57, 74 (W.D. Pa. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff bears the burden of establishing Article III standing. *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007).

The Court finds that Plaintiff has not established Article III standing because his "injury" is conjectural or hypothetical, as demonstrated by Defendant's letter dated July 21, 2017. To this end, Defendant stated in her letter that California University completed a review of its academic program inventory and analyzed its fall enrollment projections. (Docket No. 23-1 at 1). Based upon the review and analysis, Defendant "concluded that it will not be necessary to issue individual letters of retrenchment to any tenured or tenure-track faculty by the respective dates as outlined in the collective bargaining agreement." (*Id.*). Defendant stated that her letter was "official notice

7

that the letter of March 30, 2017, issued to APSCUF regarding possible retrenchment, is withdrawn." (*Id.*).

Plaintiff admits that California University "announced that retrenchment was withdrawn" but maintains that he is "in a precarious position" because "the letter is silent as to the indefiniteness of the withdrawal." (Docket No. 22 at ¶ 30). Such allegations are insufficient to establish an injury in fact that is both concrete and particularized and actual or imminent, and not merely conjectural or hypothetical. *Burns*, 776 F. Supp. 2d at 74. As Defendant has argued, this case is akin to *U.S. Airline Pilots Association v. U.S. Airways, Inc.*, No. 13-CV-627, 2013 U.S. Dist. LEXIS 140277 (W.D. Pa. Sept. 30, 2013), wherein Chief Judge Joy Flowers Conti granted the defendant's motion to dismiss for lack of subject-matter jurisdiction. Specifically, the plaintiff requested that a supplementary opinion, which awarded damages to certain pilots, be "confirmed" and that the defendant be compelled to abide by its terms. *Id.* at *4-5. Because the plaintiff admitted that the defendant had not violated the supplemental opinion, Chief Judge Conti held that it lacked standing. *Id.* at *22-23. In so holding, she explained that there was no concrete, particularized and actual injury because "[a] potential, but unspecified, future violation of the Supplemental Order [was] not the kind of prospective harm that has been deemed sufficient to satisfy Article III." *Id.* at *22. Here, Plaintiff acknowledges that the retrenchment was withdrawn but maintains that the withdrawal is indefinite. (Docket No. 22 at ¶ 30). Under these circumstances, where Plaintiff's only "injury" relates to his speculation over whether California University will pursue retrenchment in the future, the Court "does not have the power to issue any decision" as to any of Plaintiff's claims. *U.S. Airline Pilots Assoc.*, 2013 U.S. Dist. LEXIS 140277, at *23. Accordingly, the Court cannot conclude that Plaintiff has suffered an "injury in fact" demonstrating Article III standing.

*B. Administrative Remedies*

Even if Plaintiff had established Article III standing, his action must be dismissed for lack of subject-matter jurisdiction. Here, Plaintiff challenges the calculation of his seniority points. Plaintiff was required to challenge seniority calculations through the grievance and arbitration procedures outlined in the terms of the collective bargaining agreement. (Docket No. 23-3 at 1-5). To this end, the collective bargaining agreement details a four-step grievance and arbitration procedure. (*Id.* at 2-5). With respect to the first step, a faculty member "shall present a grievance orally or in writing at the lowest management level having authority to dispose of the grievance." (*Id.* at 2). As to the second step, the grievant "shall reduce the grievance to writing, stating the facts, and listing the Articles and Sections of this Agreement or the specific regulation(s) or procedure(s) upon which the grievance is based" and submit the same to the president. (*Id.*). At step three, a grievant is required to submit a written appeal to the chancellor of the state system, at which point a grievance meeting must be held. (*Id.* at 2-3). If the grievance remains unresolved after step three, then the parties must engage in binding arbitration at step four. (*Id.* at 3-5).

Current federal law and the law in effect when the subject contractual documents were written strongly favor arbitration and the enforcement of arbitration agreements. *See, e.g.*, *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 364-365 (E.D. Pa. 2003) ("In enacting the FAA and providing for the enforcement of arbitration agreements through the federal courts, Congress intended to 'reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'") (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) ("[F]ederal law presumptively favors the enforcement of arbitration agreements."); 9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be *valid, irrevocable, and enforceable*") (emphasis added); *see also Teamsters Indus. Emples. Pension Fund v. Sandy Hill Bldg. Supply Co.*, No. 15-CV-5248, 2017 U.S. Dist. LEXIS 9492, at *8 (D.N.J. Jan. 24, 2017) (dismissing the plaintiff's complaint sua sponte because the only issue before the court was subject to arbitration).[1]

Plaintiff's Second Amended Complaint does not demonstrate that he engaged in arbitration or otherwise exhausted his administrative remedies. Indeed, Plaintiff only proceeded to step two of the grievance procedure, as he alleges that he "approached [Defendant] regarding the issues, [and] she told him that he would have to sue in order to protect his right to his seniority points." (Docket No. 22 at ¶ 27). Plaintiff did not submit a written appeal to the chancellor of the state system, and the parties did not engage in binding arbitration required by the express terms of the collective bargaining agreement. *See, e.g.*, *Rouse v. City of Pittsburgh*, No. 16-CV-608, 2017 U.S. Dist. LEXIS 95181, at *17-20 (W.D. Pa. June 21, 2017) (holding that the plaintiff's claim was not ripe because it did not avail itself of post-deprivation remedies), *aff'd*, 2018 U.S. App. LEXIS 7370 (3d Cir. Mar. 23, 2018). Having concluded that this action must be dismissed for lack of subject-matter jurisdiction, *see* FED. R. CIV. P. 12(h)(3), the Court cannot at this stage compel the parties to arbitration. However, the parties are certainly free to arbitrate Plaintiff's claims, pursuant to their agreement.

Given that the Court has found a lack of standing, as well as a failure to exhaust administrative remedies, the Court concludes that permitting Plaintiff to file yet another amended

---

[1] Moreover, this District's mandatory Alternative Dispute Resolution Policies and Procedures include arbitration as an option and support the enforcement of arbitration provisions where they exist. *See* U.S. District Court for the Western District of Pennsylvania Alternative Dispute Resolution Policies and Procedures, *available at* http://coldfusion.pawd.uscourts.gov/adr/documents/adrpolicesprocedures.pdf.

complaint would be futile. *See, e.g.*, *Centimark Corporation v. Rochester Wire and Cable, LLC*, No. 17-CV-470, Docket No. 43 (W.D. Pa. Nov. 30, 2017) (dismissing matter for lack of subject-matter jurisdiction because the parties had agreed to arbitrate their claims and finding that permitting an amendment would be futile).

### C. Statute of Limitations

Even if Plaintiff had established Article III standing and subject-matter jurisdiction, his claims fail because they are barred by the applicable statute of limitations. To this end, Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. This statutory provision does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980). A plaintiff cannot obtain redress under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119-20 (2005).

Certain principles of state law are applicable to actions brought under § 1983 in situations where "the laws of the United States . . . are deficient in the provisions necessary to furnish suitable remedies." 42 U.S.C. § 1988(a). The Supreme Court has explained that when an individual commences an action under § 1983, the forum State's "statute of limitations" and "coordinate tolling rules" should be regarded as "binding rules of law." *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980). The statute of limitations applicable to actions brought under § 1983 is the statute of limitations applicable under state law to actions seeking "the recovery of damages for

11

personal injuries." *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Pennsylvania, the limitations period applicable to personal-injury actions is two years. 42 Pa.C.S. § 5524(7); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985).

Here, it is clear on the face of the Second Amended Complaint that Plaintiff became aware of his claims in 2014. Indeed, Plaintiff alleges that he first attempted to resolve his claims "on August 12, 2014." (Docket No. 22 at ¶ 24). In his brief in response to Defendant's motion, Plaintiff makes the conclusory assertion, without providing any supporting authority, that his claims are not time barred because "[e]ven though [he] knew of his dispute regarding his seniority points in August 2014, it took him over two years pursue his administrative remedies." (Docket No. 30 at 11). Any claim that Plaintiff may have had against Defendant would have accrued when Plaintiff became aware of the dispute regarding his seniority points in August 2014. *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006); *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000); *Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 648-49 (W.D. Pa. 2012). Because more than two years have elapsed between August 2014 and the commencement of this action, Plaintiff's claims against Defendant are also time-barred.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Defendant Geraldine Jones's Motion to Dismiss Plaintiff's Second Amended Complaint, with prejudice. Given the Court's rulings above, the Court need not address the defenses raised by Defendant to Plaintiff's 42 U.S.C. § 1983 claims. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record